<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| HERBERT GRAY, | : | |
| | : | CIV. NO. 21-970 (RMB-KMW) |
| Plaintiff | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN POWELL, ADMINISTRATOR | : | |
| SOUTH WOODS STATE PRISON | : | |
| *et al.*, | : | |
| | : | |
| Defendants | : | |

BUMB, DISTRICT JUDGE

Plaintiff Herbert Gray, a prisoner incarcerated in South Woods State Prison in Bridgeton, New Jersey, filed a "Motion for Emergency Relief, Motion for Temporary Restraining Order, and/or Preliminary Injunction and Order to Show Cause" on January 21, 2021, which this Court construes as a prisoner civil rights complaint. On February 3, 2021, the Court received a brief in support of Plaintiff's complaint/motion for emergency relief. The Court will treat both documents as Plaintiff's civil rights complaint. (Compl., Dkt. Nos. 1, 2.)

Plaintiff failed to pay the $402 filing and administrative fee for a civil action or alternatively submit an application to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915. 28 U.S.C. § 1915(a) provides, in relevant part,

> (a)(1) Subject to subsection (b), any court of the United States may authorize the commencement … of any suit … without prepayment of fees … by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees …. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
>
> (2) A prisoner seeking to bring a civil action … without prepayment of fees … in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

The Court will administratively terminate this action.[1] Plaintiff may reopen this action if he timely submits a properly completed IFP application or pays $402.00 for the filing and

---

[1] U.S.D.C. District of New Jersey Local Civil Rule 54.3(a) provides:

> Except as otherwise directed by the Court, the Clerk shall not be required to enter any suit, file any paper, issue any process or render any other service for which a fee is prescribed by statute or by the Judicial Conference of the United States, nor shall the Marshal be required to serve the same or perform any service, unless the fee therefor is paid in advance. The Clerk shall receive any such papers in accordance with L.Civ.R. 5.1(f).

2

administrative fees. Plaintiff should be aware that, even if granted IFP status, he must pay the $350.00 filing fee in installments, if available in his prison trust account, regardless of whether the complaint is dismissed, see U.S.C. § 1915(b)(1).

I. *Sua Sponte* Dismissal

When a prisoner is permitted to proceed without prepayment of the filing fee or when the prisoner pays the filing fee for a civil action and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and 42 U.S.C. § 1997e(c) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.[2]

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id.

---

[2] Conclusive screening is reserved until the filing fee is paid or IFP status is granted. See Izquierdo v. New Jersey, 532 F. App'x 71, 73 (3d Cir. 2013) (district court should address IFP application prior to conclusive screening of complaint under 28 U.S.C. § 1915(e)(2)).

3

(internal quotation marks omitted). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

For the reasons discussed below, the Court would dismiss the complaint without prejudice upon screening. Plaintiff also seeks a TRO or preliminary injunction. To secure such relief, a plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." Cooper v. Sharp, No. CIV.A. 10-5245 FSH, 2011 WL 1045234, at *18 (D.N.J. Mar. 23, 2011) (quoting Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir.1998), cert. denied, 526 U.S. 1130 (1999) (as to a preliminary injunction); see also Ballas v. Tedesco, 41 F.Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). Where all claims in the complaint are dismissed for failure to state a claim, the plaintiff has not alleged sufficient facts to show that he is likely to succeed on the merits, as required for a TRO or preliminary injunction. See e.g. id. at *18.

II. DISCUSSION

    A.   The Complaint

In his initial filing, Plaintiff seeks an Order enjoining South Woods State Prison, the New Jersey Department of Corrections, and all of their agents from denying him medical care, denying him a specially prescribed mattress, denying him pain medication, and denying him an appointment with a medical specialist. (Compl.,

5

Dkt. No. 1 at 1.) Plaintiff explains that he is legally blind and wheelchair-bound because he is unable to walk. (Id. at 2.) He alleges that the defendants have "denied [him] access to serious medical care and to programs available under the ADA and in violation of the NJCRA." (Id.) He further alleges that the defendants' actions or inactions violated the Eighth Amendment ban on cruel and unusual punishment. (Id.) Plaintiff submitted a copy of one medical record from Essex County Correctional Facility, dated February 1, 2019. (Compl., Dkt. No. 1 at 7.) The medical record does not establish who denied Plaintiff medical care, what care was denied or when.

Plaintiff's second submission to the Court names as defendants to this action Administrator John Powell, Nurse Practitioner Stacy Williams-Hall and the South Woods State Prison ("SWSP") Medical Director. (Compl., Dkt. No. 2 at 1.) Plaintiff alleges that

> SWSP's and New Jersey Department of Corrections' ("NJDOC") "lack of Internal Management Procedures regarding "*prisoner legal rights to medical attention*" and "*access to the courts*" have created an attitude of indifference in custody staff (specifically Sgt. McKewon, and Sgt. Muessig), towards the constitutional protections afforded inmate legal materials, and has created a pervasive risk of injury and unnecessary future harm.

6

(Compl., Dkt. No. 2 at 1-2.) Plaintiff alleges that two Sergeants directed Officer Martinez to warn Plaintiff that they were concerned with the volume of legal materials he possessed. (Compl., Dkt. No. 2 at 5.) Fearing his legal materials will be confiscated, Plaintiff seeks a temporary restraining order preventing this from happening. (Id.) In the alternative to a TRO, Plaintiff seeks preliminary injunctive relief after the defendants have answered his complaint. (Id. at 9.)

    B.   Section 1983 and NJCRA Claims

42 U.S.C. § 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff also brings claims under the New Jersey Civil Rights Act ("NJCRA"), which was modeled after § 1983. Lapolla v. County of Union, 157 A.3d 458, 469 (N.J. Super. Ct. App. Div. 2017). Claims under the NJCRA are generally subject

7

to the same defenses and immunities as those brought under § 1983. Id. (citing Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011)). Therefore, courts in New Jersey generally interpret the NJCRA analogously to § 1983. O'Neal v. Middletown Twp., No. 3:18-CV-5269-BRM-LHG, 2019 WL 77066, at *8 (D.N.J. Jan. 2, 2019) (citing Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009)).

Before turning to the necessary elements of the constitutional claims at issue, certain of the named defendants are immune from suit under § 1983 and the NJRCA. Under the Eleventh Amendment, state prisons are immune from suit in federal court, absent waiver of that immunity. Baker v. James T. Vaughn Corr. Ctr., 425 F. App'x 83, 84 (3d Cir. 2011) (citing e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). New Jersey has not waived sovereign immunity for § 1983 claims. Mierzwa v. United States, 282 F. App'x 973, 976 (3d Cir. 2008) (citing Ritchie v. Cahall, 386 F. Supp. 1207, 1209-10 (D.N.J. 1974) (holding that State of New Jersey did not waive its sovereign immunity for purposes of lawsuits filed in federal court when it enacted the Tort Claims Act)). "Moreover, although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983." Baker, 425 F. App'x at 84 (quoting Quern v. Jordan, 440 U.S. 332, 345 (1979)). The Court

8

will next address Plaintiff's § 1983 and NJCRA claims against the remaining defendants.

### 1. Eighth Amendment Inadequate Medical Care Claim

To state an Eighth Amendment claim for inadequate medical care, a plaintiff must allege facts showing "deliberate indifference to serious medical needs of prisoners" which "constitutes … 'unnecessary and wanton infliction of pain,'" Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976). Deliberate indifference may be manifested by prison doctors in their responses to a prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle, 429 U.S. at 104-5. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 106. To establish liability under the Eighth Amendment for inadequate medical care against supervisors or nonmedical personnel,

> a party must show personal involvement by each defendant. *Rode [v. Dellarciprete]*, 845 F.2d [1995], 1207 [1988]. Such involvement may be established through: (1) personal direction or actual participation by the defendant in the misconduct; or (2) knowledge of and acquiescence in the misconduct. *Id.*

9

Brito v. U.S. Dep't of Justice, 392 F. App'x 11, 14 (3d Cir. 2010). Additionally, supervisory liability may be found where a supervisor "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," Santiago v. Warminster Twp., 629 F.3d 121, 129 n. 5 (3d Cir. 2010). "[P]roof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). There must be evidence of a link between the policy or custom and the specific constitutional harm to the Plaintiff, and the link must be credible. Id.

Plaintiff has not described any of the circumstances surrounding his claim that defendants denied him medical evaluation or treatment. He appears to allege that he has been denied a specially prescribed mattress and pain medication, but he has not alleged who denied him these items, when or why. Plaintiff should submit an amended complaint describing each incident where a specific defendant denied his request for medical treatment or evaluation. Legal conclusions that the defendants violated Plaintiff's rights are insufficient to state a claim, and Plaintiff's allegations are no more than his conclusion that his rights were violated.

It appears that Plaintiff is trying to state a § 1983 claim for supervisory liability by alleging "lack of Internal Management

10

Procedures" regarding "prisoner legal rights to medical attention" and "access to the courts have created an attitude of indifference in custody staff (specifically Sgt. McKewon, and Sgt. Muessig)." Plaintiff must allege the specific internal management procedure that is lacking and how the lack of that procedure caused the denial of medical care for Plaintiff's serious medical need. Likewise, for his access to courts claim, Plaintiff must allege a specific internal management procedure that would have prevented a constitutional denial of access to the courts. In sum, Plaintiff has failed to allege sufficient facts to state a § 1983 or NJCRA Eighth Amendment claim based on inadequate medical care by any of the defendants, and the Court would dismiss those claims without prejudice upon conclusive screening of the complaint.

    2.    <u>First Amendment Access to the Courts Claim</u>

The Third Circuit has described the contours of a prisoner's First Amendment rights as follows.

> While inmates retain the "protections afforded by the First Amendment," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), they "retain[ ] [only] those First Amendment rights that are not inconsistent with [their] status as [ ] prisoner[s] or with the legitimate penological objectives of the corrections system," *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in *Turner v. Safley*, 482

11

> U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). These factors require courts to consider: (1) "whether the regulation bears a 'valid, rational connection' to a legitimate and neutral government objective;" (2) "whether prisoners have alternative ways of exercising the circumscribed right;" (3) "whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally;" and (4) "whether alternatives exist that 'fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Fraise v. Terhune*, 283 F.3d 506, 513-14 (3d Cir. 2002) (quoting *Turner*, 482 U.S. at 89-90, 107 S.Ct. 2254).

*Aulisio v. Chiampi*, 765 F. App'x 760, 763–64 (3d Cir. 2019). Where a prisoner alleged that a corrections officer refused to allow him to keep boxes of legal materials in his cell and threatened to destroy the materials, the Third Circuit held that the prisoner failed to state a claim because he did not allege he was actually injured by having limited access to his legal materials. *Gay v. Shannon*, 211 F. App'x 113, 115–16 (3d Cir. 2006) (citing *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996) (requiring an actual injury to establish a violation of the right of access to the courts). Plaintiff's access to the courts claim suffers the same deficiency identified by the Third Circuit in *Gay*. The Court would dismiss the § 1983 and NJCRA First Amendment claims without prejudice upon conclusive screening of the complaint.

    C.    <u>Americans with Disabilities Act</u>

Plaintiff alleges that he is legally blind and wheelchair bound and that the defendants denied him access to programs. Plaintiff has not alleged who denied him access, when the denial occurred or which programs and services he was denied access to, nor did he allege any reason he was given for denial of access. To state a claim under Title II of the Americans with Disabilities Act ("ADA"), a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." <u>Furgess v. Pennsylvania Dep't of Corr.</u>, 933 F.3d 285, 288–89 (3d Cir. 2019). The Court would dismiss Plaintiff's ADA claim without prejudice upon conclusive screening, but Plaintiff may be able to state a claim by alleging additional facts in an amended complaint.

III. CONCLUSION

The Court will administratively terminate this action, subject to reopening. An appropriate Order follows.

DATE: February 4, 2021

                                  <u>s/Renée Marie Bumb</u>
                                  **RENÉE MARIE BUMB**
                                  **United States District Judge**