## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HERBERT GRAY,<br><br>*Plaintiff,*<br><br>v.<br><br>UNIVERSITY CORRECTIONAL HEALTHCARE RUTGERS, *et al.*,<br><br>*Defendants.* | Civil Action No. 21-00970 (RMB) (SAK)<br><br>**OPINION** |

**BUMB,** Chief District Judge.

**THIS MATTER** comes before the Court upon two *pro se* motions filed by Plaintiff Herbert Gray ("Gray" or "Plaintiff"), a state prisoner incarcerated at South Woods State Prison in Bridgeton, New Jersey. The first is a Motion for Preliminary Injunction (Dkt. No. 139), filed November 10, 2025, seeking an order compelling Defendants to administer Gray's prescribed ophthalmic eye drops. The second is a "Motion for Legislative New Jersey Constitution 'Isolated Confinement Restriction Act'" (Dkt. No. 142), filed December 15, 2025, invoking New Jersey's Isolated Confinement Restriction Act, P.L. 2019, c. 160. Defendant University Correctional Healthcare ("UCHC") and Amanda Williams oppose. Dkt. No. 142. (Dkt. No. 145.) Defendants UCHC and Williams have separately submitted sealed medical records responsive to this Court's December 5, 2025 Text Order. (Dkt. No. 143.) For the reasons set forth below, the Motion for Preliminary Injunction (Dkt. No. 139) is

**DENIED WITHOUT PREJUDICE**, and the Motion Regarding the Isolated Confinement Restriction Act (Dkt. No. 142) is **DENIED WITHOUT PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Gray has been a state prisoner within the New Jersey Department of Corrections ("NJDOC") for over eight years and has been housed at South Woods State Prison for approximately three of those years. (Dkt. No. 139 at 5.) Gray suffers from severe bilateral glaucoma. An ophthalmology consultation conducted on May 21, 2025, by Dr. Walter Beckford, O.D. at the NJDOC documented the following findings: (1) end-stage advanced glaucoma in the right eye; (2) neovascularization glaucoma of the left eye with no light perception; (3) monocular vision; (4) mild cataract of the right eye; and (5) no background diabetic retinopathy of the right eye. (Dkt. No. 139 at 10–11.) Gray's corrected visual acuity is 22/200 in the right eye, with no light perception in the left eye. (*Id.*) Dr. Beckford prescribed a multi-drug ophthalmic regimen — including atropine 1%, brimonidine 0.2%, Cosopt, Restasis, Muro 128, Refresh Optive, Rhopressa, and latanoprost — and referred Gray to glaucoma specialist Dr. Turbin at University of Medicine and Dentistry of New Jersey ("UMDNJ") for evaluation of possible enucleation of the left eye. (*Id.* at 11.) The consulting physician further documented that Gray "is visually compromised, needs to be in the infirmary and needs assistance with eating and feeding." (*Id.*)

Gray initiated this action in January 2021. (Dkt. No. 1.) Following several rounds of screening and amendment, Gray's Second Amended Complaint (Dkt. No. 89) is the operative pleading, asserting Section 1983 claims arising from alleged denial

of adequate medical care and conditions of confinement at South Woods State Prison, including claims against Defendant UCHC, its administrators, and various NJDOC officials. The case was administratively terminated pending the appointment of pro bono counsel (Dkt. No. 127), a process that has proved protracted. Most recently, this Court appointed James E. Cecchi, Esq., but that appointment was vacated after counsel advised his firm could not accept it. (Dkt. Nos. 148, 150, 151.) The search for new pro bono counsel remains ongoing.

On November 10, 2025, Gray filed the present Motion for Preliminary Injunction (Dkt. No. 139), alleging that Defendants stopped administering his prescribed eye drops on August 11, 2025, and that continued deprivation will result in permanent loss of vision in his only functional eye. (Dkt. No. 139 at 2–3.) On October 23, 2025, Gray had raised these same medication allegations before Magistrate Judge King at a telephonic status conference. (Dkt. No. 136.) Magistrate Judge King thereafter directed defense counsel to advise his clients of Gray's allegations. (Dkt. No. 138.)

On December 5, 2025, the Court directed Defendants UCHC and Williams to file, within ten days, a letter describing Gray's medical treatment for glaucoma — including his prescription eye drops — with supporting medical records under seal. (Dkt. No. 141.) Defendants timely complied on December 15, 2025. (Dkt. No. 143.) By Text Order dated December 30, 2025, the Court sealed those records pursuant to Local Civil Rule 5.3(c)(3) and *Doe v. Delie*, 257 F.3d 309, 311 (3d Cir. 2001), and

deferred a full briefing schedule on the motion pending appointment of pro bono counsel. (Dkt. No. 144.) On December 15, 2025, Gray separately filed his Motion Regarding the Isolated Confinement Restriction Act (Dkt. No. 142). Defendants filed their opposition on January 6, 2026. (Dkt. No. 145.) Both motions are now ripe.

The Court has reviewed the sealed medical records submitted by Defendants (Dkt. No. 143-1), which include Gray's chart summary, a medications report, and Medication Administration Records ("MARs") covering August through December 2025. The Court describes their contents only to the extent necessary to explain its ruling, consistent with the privacy interests underlying the sealing order. *See Doe v. Delie*, 257 F.3d at 311.

The sealed records disclose that the events of August 11, 2025 are considerably more complex than Gray's motion suggests. Nursing notes from that date document two separate encounters in which Gray declined to receive his ophthalmic drops. In the first, a licensed practical nurse brought the drops to Gray's cell door and informed him that he would henceforth be responsible for self-administration; Gray stated he could not self-administer because of his legal blindness and prior difficulty, but then declined an offer of staff assistance and refused to sign a refusal form. A second nurse documented a substantially similar encounter later that afternoon. On the same date, Defendant Dr. Sherita Latimore-Collier entered a chart order modifying the administration protocol to provide that nursing staff would deliver the drops to Gray's cell door for him to self-administer, with staff to retrieve the medications afterward.

The MAR data for August 2025 reflects numerous entries coded "N" (Not Administered) for the ophthalmic medications beginning on or around August 11. The record does not clearly distinguish, on a dose-by-dose basis, between instances of patient refusal and instances of non-delivery attributable to Defendants.

These facts materially complicate Gray's characterization of August 11 as a straightforward medication stoppage. Whether the protocol change to self-administration was medically appropriate — given that the consulting ophthalmologist had specifically documented that Gray requires infirmary-level assistance and is "maximized on medications" — is a question the Court cannot resolve on the present record. (Dkt. No. 139 at 11.) That question is addressed further below.

## II.    LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Id.* at 20; *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). The movant bears the burden of establishing each factor. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). Where, as here, the movant seeks a mandatory injunction compelling affirmative conduct rather than preserving

the status quo, that burden is "even more stringent." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994).

In the prison medical care context, the Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). Deliberate indifference requires that the defendant subjectively knew of and disregarded an excessive risk to the prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[M]ere disagreement as to the proper medical treatment" does not satisfy this standard. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Because Gray is proceeding *pro se*, the Court construes his filings liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). That obligation does not, however, relieve him of the burden of satisfying the substantive requirements for preliminary injunctive relief.

## III.   DISCUSSION

### A. Motion for Preliminary Injunction (Dkt. No. 139)

#### 1. *Serious Medical Need*

The Court has no difficulty concluding that Gray's bilateral glaucoma constitutes a serious medical need. Gray has been diagnosed with end-stage advanced glaucoma in his only eye with any residual visual function, has no light perception in

his left eye, and has been deemed legally blind by the State of New Jersey and NJDOC's medical program. (Dkt. No. 139 at 5–6.) His consulting ophthalmologist has prescribed a complex, multi-drug regimen to manage intraocular pressure and preserve his remaining vision. *See Lanzaro*, 834 F.2d at 347; *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (recognizing the seriousness of a medical need when delay in treatment risks permanent injury). This factor is not in dispute.

### 2. *Likelihood of Success on the Merits*

Gray's characterization of August 11, 2025 as a straightforward denial of prescribed medication is not supported by the sealed record. The documentation reflects that on that date nursing staff brought Gray's drops to his cell door, informed him of a protocol change requiring self-administration, offered to assist him in doing so, and documented his refusal. The Court does not read that sequence as a simple stoppage of care.

The deliberate indifference question, however, does not end there. The relevant inquiry is not only *whether* Gray refused, but whether the protocol change that precipitated the refusal was *itself* constitutionally adequate. A prisoner's refusal of treatment does not insulate medical staff from Eighth Amendment liability where the conditions under which treatment was offered were themselves deficient. *See White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) (deliberate indifference may be established where prison medical staff "prevent an inmate from receiving recommended treatment"). Here, the consulting ophthalmologist specifically documented that Gray

is "maximized on medications," requires infirmary placement, and "needs assistance with eating and feeding." (Dkt. No. 139 at 11.) The protocol change that shifted responsibility for administering a complex, multi-drop ophthalmic regimen to a legally blind patient — without apparent reference to those specialist findings — is not obviously consistent with the standard of care the specialist prescribed. Whether Dr. Latimore-Collier's August 11 order constituted a knowing departure from those recommendations, and whether it contributed to the subsequent pattern of non-administration documented in the MARs, are questions the Court cannot resolve without adversarial briefing.

The motion has not been fully briefed. Defendants have submitted sealed medical records but have not filed a substantive merits opposition. Gray has not had the assistance of counsel. On this record, the Court declines to make a finding — in either direction — on the likelihood of success. The deliberate indifference question is a live one, and the Court does not foreclose it. What the record does not support is the threshold finding required to issue a mandatory injunction.

### 3. Irreparable Harm

Permanent vision loss is, by its nature, an injury that damages cannot remedy. *See Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (irreparable harm must be imminent, not speculative). The Court takes seriously the risk that delay could result in permanent injury. At the same time, the sealed record does not clearly establish that Gray is currently being denied his ophthalmic

medications in any manner unattributable to his own documented refusals, nor does it establish the status of his eye drop administration with sufficient clarity to support mandatory injunctive relief. Updated medical records, obtained on a current record with counsel's assistance, are necessary to assess this factor properly.

### 4. Balance of Equities and Public Interest

Were deliberate indifference established, the balance of equities and the public interest would unambiguously favor Gray. There is no legitimate penological interest in withholding from a legally blind prisoner the ophthalmic medications prescribed by a specialist to preserve his only functional eye. *See Estelle*, 429 U.S. at 103–04; *Helling v. McKinney*, 509 U.S. 25, 33 (1993). These factors weigh in Gray's favor. They do not, however, independently supply the threshold showing of likelihood of success required to issue a mandatory injunction. *Acierno*, 40 F.3d at 653.

### 5. Disposition

For the foregoing reasons, the Motion for Preliminary Injunction (Dkt. No. 139) is denied without prejudice. Upon appointment of pro bono counsel, the Court will set an expedited briefing schedule for any renewed motion. The Court separately directs Defendants UCHC and Williams to supplement the sealed medical records previously submitted (Dkt. No. 143-1) with updated records reflecting Gray's current ophthalmic treatment and medication administration, to be filed under seal within fourteen (14) days of the date of this Opinion. The Court's denial is without prejudice to, and should

not be read as foreclosing, a renewed motion for preliminary injunctive relief on a fully developed record.

## B.  Motion Regarding the Isolated Confinement Restriction Act (Dkt. No. 142)

Gray's second motion asks this Court to "argue the New Jersey Constitution Legislation for the 'Isolated Confinement Restriction Act'" and to enjoin Defendants from violating that Act's standards with respect to his isolated confinement at South Woods State Prison. (Dkt. No. 142 at 1–2.) The motion also reasserts Gray's allegations regarding his medical treatment and conditions of confinement. (*Id.*) Defendants oppose. (Dkt. No. 145.)

The motion fails for two independent reasons.

First, the New Jersey Isolated Confinement Restriction Act, P.L. 2019, c. 160, codified at N.J. Stat. Ann. §§ 30:4-82.5 through 30:4-82.11, is a state statute. This Court's subject-matter jurisdiction rests on Gray's federal constitutional claims under 42 U.S.C. § 1983. The Act does not, of itself, create a federal right enforceable under Section 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). To the extent Gray seeks to enforce the Act as an independent cause of action in this Court, he must identify a basis for federal jurisdiction or invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367. The motion does neither.

Second, Gray asks this Court to "argue" state legislation on his behalf. That is not relief a federal district court can provide. A court adjudicates disputes; it does not advocate legislative positions or serve as counsel to a party. *See* U.S. Const. art. III.

The Court notes that Gray's underlying concerns — including the use of isolated confinement in a cell incompatible with his disability and medical needs — may present cognizable claims under the Eighth Amendment or the Americans with Disabilities Act, 42 U.S.C. § 12132, which are already pleaded or potentially available in the operative complaint. Appointed counsel may assess whether those claims warrant additional development. Accordingly, the denial of Dkt. No. 142 is without prejudice to Gray's ability, through appointed counsel, to assert any properly framed federal or state-law claim arising from his conditions of confinement.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Preliminary Injunction (Dkt. No. 139) is **DENIED WITHOUT PREJUDICE**. The Motion Regarding the Isolated Confinement Restriction Act (Dkt. No. 142) is **DENIED WITHOUT PREJUDICE**. Upon appointment of pro bono counsel, the Court will set an expedited briefing schedule for any renewed motion for preliminary injunctive relief. Defendants UCHC and Williams are directed to file supplemental sealed medical records as set forth above within fourteen (14) days. An appropriate Order accompanies this Opinion.

Dated: **June 12, 2026**

s/ Renée Marie Bumb
**Renée Marie Bumb**
**Chief  United  States**
**District Judge**